SMITHBRIDGE, LLP
BY: Andrew M Smith, Esquire
Two Penn Center
1500 JFK Blvd, Suite 900
Philadelphia, PA 19102
(215) 564-LAW1
Andrew@Smithbridgellp.com
COUNSEL FOR PLAINTIFF

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JASON EUGENE TERRY | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| SUNTRUST BANKS, INC d/b/a SUNTRUST | : | |
| BANK; SUNTRUST BANK, INC;   MARTIN | : | |
| KELLY CAPITAL MANAGEMENT, LLC; | : | **COMPLAINT AND JURY DEMAND** |
| WILLIAM C. CRAFTON, JR.; ADAM FEIN; | : | |
| CSI CAPITAL MANAGEMENT, INC; and | : | |
| John Does 1-50 | : | |
| | : | |
| Defendants. | : | |

## INTRODUCTION

1.     Plaintiff Jason Eugene Terry (hereafter, **"Plaintiff"**) brings this action against Defendants SunTrust Banks, Inc. doing business as SunTrust Bank, Inc and/or SunTrust Bank, Martin Kelly Capital Management, LLC, CSI Capital Management, Inc., William C. Crafton, Jr., Adam Fein and John Does numbers 1 through 50 (collectively, **"Defendants"**).

2.     The allegations herein are based upon personal knowledge, information, belief, and the continuing investigation of Plaintiff's counsel.  Some facts alleged herein are derived from the Complaint and Civil action Feeley v. SunTrust Bank et al, USDC No: 2:12-cv-4522, which was filed in the Eastern District of Pennsylvania on August 9, 2012.  Many facts and documents related to Plaintiff's allegations are known and possessed only by Defendants or are exclusively within their control.  Substantial evidentiary support will therefore, be developed only after reasonable discovery.

3.      Defendants William C. Crafton. Jr. (**"Crafton"**) and Adam Fein (**"Fein"**) were registered representatives, agents, employees, members, owners, partners, associates and/or shareholders of Defendants CSI Capital Management, Inc. (**"CSI"**), Martin Kelly Capital Management, LLC (**"MKCM"**) and SunTrust Bank, Inc. (**"SunTrust"**) at the relevant times material hereto and for the reasons set forth below, each of said Defendants is liable for the conduct of Crafton, Fein and others working with, for or under Crafton and/or Fein.

4.      Plaintiff is an investor/client of financial advisor Crafton and Fein, who together with Crafton's investment advisory companies (Defendants CSI, MKCM and SunTrust) managed, controlled, monitored, maintained, handled, invested and consequently, lost in excess of two million four hundred thousand dollars ($2,400,000) of Plaintiff's assets through high risk, illiquid investments. Plaintiff seeks damages for losses incurred due to Defendants' misrepresentation, mismanagement, fraud, omissions, concealment, negligence, lack of supervision, breach of fiduciary responsibilities and other wrongful conduct.

## THE PARTIES
### Plaintiff Jason Terry

5.      Plaintiff is a world-class professional athlete playing in the National Basketball Association (**"NBA"**) for the Boston Celtics. Crafton solicited Plaintiff in or around 2006 when Plaintiff was a member of the Dallas Mavericks. At that time, Plaintiff was Crafton's only professional basketball player.

6.      Defendant Crafton promoted himself as a financial advisor and became the financial advisor and money manager for Plaintiff, managing a substantial portion of the income and assets Plaintiff obtained through his professional basketball career.

7.      At that time, Crafton represented to Plaintiff that he was the investment advisor of at least twenty (20) other professional athletes including players in the National Football League, National Hockey League and Major League Baseball. Crafton's clients were and are commonly referred to in the financial industry as his "roster" and Crafton consistently used these athletes' names and personas to solicit other professional athletes, like Plaintiff.

### Defendants William C. Crafton, Jr., Adam Fein, Martin Kelly Capital Management, LLC, CSI Capital Management, Inc., SunTrust Bank, Inc. and John Does numbers 1-50

8.      Defendant Crafton is a resident of San Diego, California and holds himself out to the general public and more specifically to professional athletes, as a licensed, registered and

insured financial advisor. Based upon initial investigation, Crafton was at all times material hereto a member, shareholder, principal, owner, partner, employee, salesman, servant, agent, broker, representative and/or independent contractor of Defendants SunTrust, CSI and MKCM and Crafton is/was registered as a financial advisor with American Express Financial Advisors, IDS Life Insurance Company, MKCM, CSI and SunTrust.

9.      Defendant Fein is a resident of San Diego, California and holds himself out to the general public and more specifically to professional athletes, as a licensed, registered and insured financial advisor. Based upon initial investigation, Fein was at all times material hereto a part of Crafton's "financial advisory team" and was a member, shareholder, principal, owner, partner, employee, salesman, servant, agent, broker, representative and/or independent contractor of Defendants SunTrust, CSI and MKCM and Fein is/was registered as a financial advisor with MKCM, CSI and SunTrust.

10.     At times material hereto, and specifically in or around March, 2003 and continuing thereafter, Crafton and Fein were representatives, brokers, agents, employees and registered investment advisors with Defendant CSI, a duly licensed and registered investment advisory firm and wealth management company specializing in the investment and asset management of professional athletes, with its primary office address located at 600 California Street, 18th Floor, San Francisco, CA 94108. (SOURCE: www.CSIcapital.com)

11.     In or around August 2006, Crafton and Fein resigned, separated and/or were terminated from Defendant CSI and opened and/or became employed by the investment advisory firm of Defendant MKCM, which is a duly authorized and registered investment and asset management company, who similarly advertises and holds themselves out as "specializing" in the "unique needs of…athletes" and claims to have "insight and experience in managing investments and advising…athletes…through complex decisions." MKCM has its principal place of business located at 11512 El Camino Real 370, San Diego, California, 92130. (SOURCE: www.martinkellycapital.com )

12.     On or about October 26, 2009 by way of form letter, Crafton and MKCM advised Plaintiff that they were engaged in discussion with Defendant SunTrust "a leading financial institution" regarding a "non-binding proposal" to make a "strategic acquisition of [MKCM] business by acquiring substantially all of the assets of Martin Kelly." The letter indicated that SunTrust was the "ideal partner" to help Defendant Crafton to deliver "full service, high quality

wealth management services" to his professional athlete clientele. Defendant Crafton represented that he "will continue to be directly responsible for [their] account along with the other members of the Martin Kelly team who [they] know."

13.     Defendant Fein was at that time a "member" of MKCM who was referenced in that letter and who transitioned over to Defendant SunTrust with Crafton.

14.     In November 2009 Defendant SunTrust purchased Defendant MKCM for its Sports and Entertainment Specialty Group, which included Plaintiff's accounts. The purchase price paid to Defendant Crafton by Defendant SunTrust was approximately two million seven hundred thousand dollars ($2,700,000.00). This transaction was labeled as an acquisition of assets which in actuality was the transfer of Defendant Crafton's "roster" of professional athletes (including Plaintiff) and Crafton was announced as the head of Defendant SunTrust's San Diego office. Defendant SunTrust Bank Inc. d/b/a SunTrust Bank; SunTrust Bank, Inc and SunTrust and its so called "Sports & Entertainment Specialty Group" are headquartered at 303 Peachtree Street, N.E., Atlanta, Georgia 30308.

15.     Then Defendant SunTrust, by way of merger, sale, acquisition, transfer or purchase acquired Defendant CSI, (one of Crafton and Fein's former employers during times relevant to Plaintiff's claims) to boost its Sports & Entertainment Specialty Group and manage the assets of even more professional athletes.

16.     Defendants SunTrust, CSI and MKCM are each registered investment advisors under the Investment Advisor Act and together, all the named Defendants have served as Plaintiff's financial advisors and financial managers during all times relevant to the claims contained herein.

17.     Defendants John Does 1 through 50 are individuals, partnerships, companies, corporations or other entities whom Plaintiff is ignorant of their true names and legal capacities and therefore Plaintiff sues these Defendants by such fictitious names. Plaintiff is informed and believes, and thereon alleges, that each of the Defendants designated herein as a **John Doe** is responsible in some manner for the mismanagement, misrepresentation, fraud and deception, breaches, acts, omissions, and/or events alleged herein, and actually and proximately caused injuries and damages to Plaintiff as alleged herein. Plaintiff will seek leave to amend this Complaint to allege their true names and capacities when ascertained.

## JURISDICTION AND VENUE

18.      This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 because this action arises under the laws of the United States, more specifically Section 27 of the Securities Exchange Act, 15 U.S.C. §78(a) *et seq.*; 15 U.S.C. §78j(b); Rule 10b-5 (17 C.F.R. §240.10b-5) and 15 U.S.C. §78t(a). In connection with Defendants' acts, conduct and other wrongdoings complained of herein, Defendants directly or indirectly used the means and instrumentalities of interstate commerce and/or the mails.

19.      Venue lies in this Court pursuant to 15 U.S.C. §78aa and 28 U.S.C. §1391 because, among other things, Defendants transact business in this judicial District, solicit business within this District and otherwise subject themselves to the jurisdiction of this Court.

## DEFENDANTS' ROLES AND SCHEME

20.      At all times material hereto, Defendants were able to create, control, disseminate, manage, represent and conceal all the material facts, documentation and information concerning Plaintiff's assets, investments, values, portfolio management and net worth. Each Defendant had discretion and control over Plaintiff's money and access to undisclosed information regarding Plaintiff's investments and Defendants had the authority/ability to prevent or correct disseminations of proper, truthful and accurate information to Plaintiff.

21.      Defendants, in their position, each had a fiduciary duty to promptly inform and disseminate accurate and truthful information and to correct any misleading omissions of fact regarding the financial condition, performance, operations, financial statements, and investments that Defendants made on Plaintiff's behalf. Despite this affirmative duty placed upon each Defendant, each knowingly and intentionally made, or participated in making or reviewed misleading statements and omissions of material fact in order to carry out investment transactions that were not in Plaintiff's best interests and were not suitable given Plaintiff's risk tolerance.

22.      Defendants are each liable for any material false statements or omissions pleaded herein, as the statements are each "published" information for which they are collectively responsible.

23.      Plaintiff is informed and believes, and thereon alleges that, at all relevant times, each Defendant was the principal, agent, employee, partner, associate, joint venture, successor-in-interest, co-conspirator and/or acting in concert with, and under the direction and control of,

each remaining Defendant, and in doing the things alleged in this Complaint, each Defendant was acting within the course and scope of these relationships.

24.     Plaintiff is informed and believes, and thereon alleges, that, at all relevant times, each Defendant conspired with each remaining Defendant, and acted in accordance with the scheme devised and enacted jointly by each such Defendant. Among the co-conspirators are persons other than the named Defendants who are unknown to Plaintiff, who participated in, assisted, and advised Defendants. Said unnamed co-conspirators (Defendant "John Does") played a role in the fraudulent misrepresentations and omissions alleged herein.

25.     In addition to the discretionary authority and control Defendants maintained over Plaintiff's assets, Crafton and the other Defendants recommended Plaintiff use their accountants. In what appears to be a tactical move to enhance and maintain ultimate control over Plaintiff's assets and the information related thereto, Plaintiff was referred to Lavine, Lofgren, Morris and Engelberg, LLP, certified public accounts, where they were instructed to use accountant Larry J. Campbell (**"Campbell"**), who has since prepared and filed most of Plaintiff's tax returns as well as returns for Defendants herein. Upon information and belief, Crafton and Campbell have a personal relationship which allowed Crafton to control Plaintiff's asset and tax information.

## FACTUAL AVERMENTS

26.     Beginning in or around 2006 and continuing thereafter Defendants Crafton and Fein became the investment advisors and money managers of Plaintiff, who by the time of the filing of this Complaint has terminated the relationship with Defendants and their respective companies.

27.     Plaintiff's relationship with Defendants Crafton and Fein began when Plaintiff's former NBA agent, Byron Irvin, referred Plaintiff to Defendant Crafton who was a member of Defendant CSI, where Fein also worked. Initially, Defendant Crafton and Plaintiff met and Plaintiff signed numerous documents engaging Defendant Crafton as his financial advisor.

28.     From that point on, Defendant Crafton came to control and exercise discretionary authority over Plaintiff's assets and finances generated from his professional basketball career. After Defendant Crafton left Defendant CSI and formed MKCM, Plaintiff's main point of contact became Defendant Fein, who worked directly with Crafton as part of Crafton's so called "investment advisory" team.

29.     At some point in time during Plaintiff's relationship with Defendant Crafton, Crafton recommended Plaintiff engage Campbell as his accountant. It may become evident, after discovery is exchanged, that Campbell assisted, participated and/or was complicit in Defendant Crafton's schemes; however at all times, material hereto, because of the relationship between Crafton and Campbell, Plaintiff rarely received, reviewed or audited his assets and financials because all information, documentation and taxes were handled by and between Crafton, his advisory team and Campbell.

30.     Defendants Crafton and Fein, at all times relevant to this Complaint, were registered as investment advisors working under the supervision and control of Defendants CSI, MKCM and SunTrust or their subsidiaries and affiliates each of which are broker-dealers registered with the United States Securities and Exchange Commission and were authorized to conduct business in the United States.

31.     From the inception of Defendant Crafton's representation of Plaintiff, Plaintiff had specific conversations with Crafton about employing a conservative investment strategy, with a liquid portfolio of assets aimed at preserving the money that Plaintiff had and would accumulate during Plaintiff's professional athletic career. Crafton expressly understood and acknowledged the short and unsecure nature of income that accompanies playing professional sports and so he assured Plaintiff he was a very conservative, low risk taking money manager.

32.     Defendant Crafton solicited the assets, trust and confidence of Plaintiff, by specifically representing to Plaintiff that he was a "licensed and registered financial advisor"; and he represented significant professional athletes in multiple sports; and he employed a very conservative, safe and liquid investment strategy aimed at growth with little to no risk. Crafton specifically told Plaintiff that Plaintiff could, at any time, get out of the investments Crafton placed Plaintiff in because he said every investment he placed Plaintiff in was a very safe, liquid asset.

33.     However, contrary to his express representations, Defendant Crafton placed Plaintiff in high-risk, alternative investments, which were Ponzi schemes or other fraudulent investments run, managed, controlled, operated and/or created by individuals with whom Crafton had a personal relationship, business dealings or kick-back agreements. These investments were unsuitable and illiquid and Crafton had some financial interest and undisclosed relationship with each investment that was never disclosed to Plaintiff.

34.     Crafton and Defendants CSI, MKCM and SunTrust each failed to advise Plaintiff that Crafton, improperly utilizing his discretionary authority over Plaintiff's assets, would materially change Plaintiff's stated and known investment strategies and would instead concentrate Plaintiff's investment portfolio in unsuitable, privately held, unsecured, illiquid securities.

35.     Crafton knowingly made false and material misrepresentations to Plaintiff before the date Crafton placed Plaintiff into certain high-risk, illiquid investments, by stating he would take Plaintiff's money and invest it in safe investments that would provide a steady stream of income to Plaintiff throughout Plaintiff's life.

36.     In fact, Crafton at various times throughout his relationship with Plaintiff, sold, merged or transferred Plaintiff's assets among the various Defendants CSI, MKCM and SunTrust and in doing so Defendants made express and affirmative representations to Plaintiff about their financial safety and well-being. Defendants' expertise in handling wealth management for professional athletes and how Defendants "specialize" in the Sports and Entertainment field.

37.     Contrary to statements and representations such as these, Defendant Crafton did not invest Plaintiff's money in safe investments and did not provide high-quality wealth management services, but rather misappropriated his funds for Crafton's personal use; invested Plaintiff's money in illiquid, high risk, alternative investments; invested Plaintiff's money in Ponzi schemes run by his friends and colleagues; and/or transferred and/or commingled Plaintiff's money among other investors and athletes whom Crafton represented to prevent them from discovering Crafton's frauds, schemes and poor investment strategy as well as Plaintiff's financial losses.[1]

38.     Neither Crafton nor Fein ever advised Plaintiff of their relationship with these people and entities, never disclosed that they received substantial commissions and kick-backs for investing Plaintiff's money in these investments, and were able to manipulate the actual dissemination of information concerning these investments, their holdings and the actual worth so that Plaintiff could not discover the truth about Plaintiff's investments, Plaintiff's portfolio's actual value or Defendants' investment strategies for Plaintiff's assets.

---

[1] By way of example, SunTrust acknowledged Crafton's improper investment strategies and refunded Jason Terry certain amounts Crafton had invested under SunTrust's supervision in an entity known as Rineon.

39.     Crafton, Fein and other staff followed Crafton from CSI to MKCM to SunTrust and they actively participated in Crafton's scheme to generate commissions for themselves, capital for their colleagues' Ponzi schemes and to obtain a high valuation of Crafton's "roster" of professional athletes so Crafton could sell his "roster" among Defendants, ending with SunTrust which paid in excess of $2,700,000.00 for Crafton's "roster."

40.     By way of example, Martin Struthers (**"Struthers"**), an employee and investment advisor with Crafton and his various companies, had a personal relationship with Matthew Jennings (**"Jennings"**), the principal of various so called "Westmoore" entities and funds (e.g. Westmoore Management, LLC, Westmoore Lending Opportunity Fund, etc.) who is now under Federal investigation. Struthers was registered as a "broker" for Westmoore while he was also employed with Crafton at Defendants CSI, MKCM and/or SunTrust. Similarly, Crafton is believed to have invested Plaintiff in a "Mar Vista" fund in which Crafton was a "partner" however Crafton never disclosed that fact to Plaintiff. Like Westmoore, Mar Vista was an illiquid, high-risk alternative investment for which Plaintiff lost essentially all of his investment.

41.     Defendants were each negligent and failed in their independent fiduciary duties to Plaintiff by allowing Crafton to invest almost a substantial percentage of Plaintiff's assets in high-risk and illiquid, alternative investments and Ponzi schemes, some of which Crafton and his team of advisors had personal relationships with and/or were actually registered "brokers" for said investments.

42.     Defendants never requested or required Plaintiff to complete a client profile or investment objective statement; Defendants never developed an investment program for Plaintiff; Defendants failed to define any of Plaintiff's financial risks and Defendants failed to follow industry standards in assessing Plaintiff's risk tolerances and in setting up a proper investment portfolio for Plaintiff based upon Plaintiff's age, income, assets and long term financial needs.

43.     Defendants each breached their respective duties to Plaintiff by failing to disclose Crafton's and Struther's relationship with Jennings and Westmoore as well as monitoring and controlling Crafton's conduct.

44.     In or around the Fall of 2010, Thomas Carroll (**"Carroll"**), Defendant SunTrust's Managing Director of the Sports & Entertainment Group, called Plaintiff on his cellular telephone and advised him that Defendant Crafton was under investigation by SunTrust and the Securities and Exchange Commission (**"SEC"**) for certain investments he was making on his

clients' behalf, including Plaintiff herein. No specific information or documentation about his conduct and these investments was provided to Plaintiff; instead Carroll and SunTrust were ambiguous as to what was actually taking place.

45.     As a result of that telephone call, Plaintiff attempted to notify Defendant Crafton that he was being terminated as Plaintiff's financial advisor. Plaintiff never received any acknowledgement or response to that letter from Crafton or SunTrust. At that time, Plaintiff requested from Defendant Crafton and SunTrust his financial records which Plaintiff began receiving in bits and pieces around late November 2010, from his custodian "Charles Schwab".

46.     At or around the end of November, 2010 Plaintiff for the first time, received and reviewed an investment account statement dated October 31, 2010 (from Charles Schwab) which listed one of his largest assets/investments as "Pending Litigation." Upon receiving this financial statement Plaintiff was, for the first time, placed on notice that one and possibly more of his investments, placed, managed and controlled by Defendants was essentially worthless. The actions and conduct of Defendant Crafton, Fein and their various Defendant companies including CSI, MKCM and SunTrust (collectively the **"Defendant Companies"**) constituted active and/or fraudulent concealment of information and documentation that prevented Plaintiff from knowing or discovering the wrongs being committed against him and therefore equitably tolled any applicable statute of limitations for any Federal or State law claims set forth herein.

47.     Plaintiff was not aware of the fraudulent concealment of Defendant Crafton and his various Defendant Companies until the months following the November 2010 receipt of his Schwab account statement for numerous reasons. First, Defendants possessed all the information and documentation necessary for Plaintiff to discover their improper conduct. Second, Crafton did not represent any of Plaintiff's peers in the NBA and thus Plaintiff did not have collateral knowledge of anyone questioning any Defendants' conduct through word-of-mouth divulgence. Third, Plaintiff's financial records were sent to and remained in the sole and exclusive possession of Defendant Crafton during his representation of Plaintiff. Fourth, the nature of the fraudulent scheme that Defendant Crafton conducted did not lend itself to discovery until it began to unravel toward the end of 2010. And lastly, Plaintiff was unable to gather and audit all of his financial information until the months following November, 2010 when he received copies of his account statements from Charles Schwab and provided them to his new financial advisory firm who began to discover Defendants' actions, conduct and concealment.

48.     Because Crafton was a registered representative, agent, advisor, owner, partner, member and/or employee of Defendants CSI, MKCM and SunTrust, each employer/Defendant had a duty to supervise, monitor, audit, control and prevent the conduct of Crafton and his team which occurred here. Each Defendant violated their fiduciary duties to Plaintiff by failing to properly supervise, oversee, audit, investigate, review, monitor and control Crafton's conduct.

49.     Plaintiff is now informed and believes that Defendants overvalued Plaintiff's investments and asset portfolio; failed to disclose the high-risk and/or illiquid nature of these investments to Plaintiff; disseminated false and misleading portfolio statements and asset information; made assurances to Plaintiff as to the security and safety of these alternative investments by insisting that he/they too, had money "in the game" and Defendants misrepresented the value and security of these alternative investments to Plaintiff to dismiss and dispel any notion that the investments were abnormally volatile, risky, unsuitable and/or illiquid.

50.     Defendants circulated copies of subscription agreements and subscription booklets and other documents to Plaintiff which set forth misleading statements due to the omissions of material facts and true nature of the investment.

51.     Certain John Doe Defendants whose names are unknown, conspired with the named Defendants and drafted, revised, participated in and advised Defendants with respect to the foregoing material misrepresentations and omissions in documents issued to Plaintiff. Said John Doe Defendants conspired and participated in drafting the documents knowing that they were intended to be relied upon by Plaintiff. Said co-conspirators further knew, or were reckless in not knowing, of the continuing decline of the investments and knew, or should have known, of the substantial risks or loss to investors in the alternative investments.

52.     If Defendants CSI, MKCM and SunTrust had properly supervised, controlled, monitored or audited Crafton and their respective employees, Defendant Crafton would not have been able to perpetrate his fraudulent schemes and improper conduct, Plaintiff would not have remained in these alternative investments, Plaintiff would have known of the significant risks associated with the investments and Defendants could have and would have prevented Plaintiff from losing millions of dollars of money that Crafton had placed in these alternative investments.

53.     Defendants' failure to properly supervise Crafton included numerous red flags which should be considered notice to Defendants of Crafton's actions, including:

a.  SunTrust performed a due diligence investigation into Crafton's clientele prior to acquiring Crafton's business assets in November 2009;

b.  MKCM and SunTrust realized that Crafton never had Plaintiff complete investment profiles, risk tolerance questionnaires or other industry standard investment profiles;

c.  MKCM and SunTrust knowing and allowing Crafton to ignore industry standard document retention systems and requirements;

d.  Allowing Crafton to operate without having developed or defined written investment objectives for Plaintiff.

### The "Interested" Transactions and Investment Advisors' Act of 1940

54.  Defendants' transactions, initiated on behalf of Plaintiff were "interested," self-dealing transactions, requiring consent by investors under the Investment Advisors Act of 1940. In these transactions, Defendants knowingly acted as principals in selling investment securities without proper disclosure or informed consent of Plaintiff, their client, as required by section 206(3) of the Investment Advisors Act of 1940.  Defendants were subject to said statute and regulations such as 17 CFR Section275.206(3)-(2) and SEC Release No. IA-1732, which require (i) a written consent prospectively authorizing the completion of such self-dealing transactions ("agency cross transactions for an advisory client"), (ii) after *full disclosure* including pricing and "best price" to enable the client to make an *informed decision* to consent to the transaction, with (iii) the Investment Advisor and affiliated parties consistently acting in the best interests of the client. Defendants failed to obtain the required informed consent, or any consent, to their scheme.  By this failure to obtain investors' consent, Defendants knowingly defrauded Plaintiff.

55.  Upon information and belief Crafton placed Plaintiff into alternative investments and then allowed said alternative investment companies to act as Plaintiff's broker-dealer for Plaintiff's investment of money into subsequent alternative investments.

### Defendants Failure to Seek Approval of the Transactions

56.  On information and belief, based on Defendants' access to portfolio records, confidential information and knowledge of current market conditions, Defendants failed to seek any adequate, informed consent from Plaintiff for the alternative investments because Defendants knew the transactions were unsuitable or inconsistent with Plaintiff's risk tolerance and investment strategy.

57. Similarly, Defendants also failed to make any effort to *directly* disclose the terms of the self-dealing transactions to Plaintiff.

**Undisclosed Amounts Required by the Transactions**

58. As Plaintiff continues to investigate Plaintiff has come to learn Defendants were paid undisclosed and unanticipated commission amounts on account of Plaintiff's investments.

## COUNT I:

**Section 10(b) of the Securities Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants**

59. Plaintiff repeats and re-alleges each allegation set forth herein.

60. Defendants violated Section 10(b) of the Securities Exchange Act, 15 U.S.C. Section 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. Section 240.10b-5, in that they:

    a. Employed devices, schemes, and artifices to defraud;

    b. Made untrue statements of material facts or omitted material facts which, in light of the circumstances, needed to be disclosed in order to make the statements made not misleading; and

    c. Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff in connection with their investment decisions.

61. As alleged above, Defendants, by and through their agents and representatives, intentionally, carelessly and/or recklessly misrepresented and omitted material facts in connection with the sale of securities and other investments to Plaintiff.

62. More specifically, Defendants' misrepresentations and omissions were intended to deceive and did deceive Plaintiff, for the purpose of causing Plaintiff to invest in risky and/or illiquid "alternative investments" that did not match Plaintiff's risk tolerance. For instance, Plaintiff's funds were contributed to various known Ponzi-schemes, including the Westmoore Lending Opportunity Fund (**"Fund"**), the value of which is essentially zero and the actual Fund, along with other Westmoore entities, is in receivership. Defendants Crafton and Fein had inside information about the liquidity and security of this Fund and they were in fact, friends and sharing commissions with CEO of various Westmoore entities, Jennings.

63. At all times material hereto, Defendants failed to make disclosures to Plaintiff, including those necessitated by Securities Law and the usual custom of the financial community.

and Defendants failed to obtain the informed consent required for certain self-interested and self-dealing transactions.

64. Defendants owed Plaintiff a duty to avoid misrepresentations and omission of material facts regarding their investments under Section 10(b) of the Securities Act of 1934 and Rule 10b-5 promulgated thereunder. Despite this duty, Defendants made these misrepresentations and omissions knowingly, with the intent to deceive and defraud Plaintiff, and with reckless disregard for the truth and materiality thereof, for the purpose of inducing Plaintiff to invest so that Defendants could earn lucrative commissions and fulfill other self-serving financial objectives.

65. Plaintiff reasonably relied on Defendants' representations, in light of Defendants' reputation in the investment community and based on the representations Crafton and Fein made about the safety and security of these alternative investments.

66. Unbeknownst to Plaintiff at all times materially hereto, the investments recommended by Defendants primarily served to benefit Defendants' interests at the expense of Plaintiff's interest, in contravention of Section 10(b) of the Exchange Act and Rule 10b-5.

67. As a direct, proximate, and foreseeable consequence of Defendants' misrepresentations, nondisclosures, and omissions, Plaintiff invested in the alternative investments that were being promoted by Defendants, which caused Plaintiff to suffer extensive monetary damage due to the instant diminution in the value of the alternative investments, the illiquidity of said investments which eventually resulted in their complete loss; the unreasonable management fees and commissions extracted by Defendants during the relevant time period, and the self-dealing nature of the investments. Plaintiff's financial loss was thereafter exacerbated by Defendants' active concealment of the initial diminution in the value of Plaintiff's capital contributions as well as Defendants' lack of supervision and oversight of these investments, which resulted in Plaintiff's continued investment in these alternative investments and further resulted in almost a complete monetary loss of Plaintiff's entire investments.

68. The quantification of Plaintiff's aforesaid damages and losses shall be proven at trial.

## COUNT II

### Violation of Section 20(a) of the Securities Exchange Act Against Defendants SunTrust, CSI and MKCM

69.     Plaintiff repeats and re-alleges each allegation set forth herein.

70.     Defendants SunTrust, CSI and MKCM exercised control over Defendant Crafton's operations as a registered representative.

71.     Defendant Crafton is an individual liable under Section 10(b) of the Exchange Act as specified in Count I.

72.     Defendants SunTrust, CSI and MKCM had the power and authority to control Defendant Crafton with respect to the wrongful conduct complained of herein and failed to do so.

73.     By reason of Defendants SunTrust, CSI, MKCM, and Crafton's conduct, all are jointly and severally liable pursuant to Section 20(a) of the Securities Exchange Act for damages specified in and arising from Count I, above.

## COUNT III

### Rescission under Securities Exchange Act of 1934, Section 29(b) Against All Defendants

74.     Plaintiff repeats and re-alleges each allegation set forth herein.

75.     Plaintiff entered into contracts with Defendants directly and indirectly upon signing their respective Subscription Agreements and receipt of the PPMs.

76.     Each such contract entered into by Plaintiff was made in violation of Section 10(b) of the Exchange Act of 1934 and SEC Rule 10b-5 promulgated thereunder, due to the misrepresentations and omissions of material facts as hereinabove alleged. Furthermore, each such contract has involved violations of said Section 10(b) and Rule 10b-5.

77.     Section 29(b) of the Securities Exchange Act of 1934 provides that any such contract (i) made in violation of, or (ii) involving performance thereof that violates, Section 10(b) or Rule 10b-5, shall be void as to any person who, in violation thereof, shall have made or engaged in the performance of any such contract.

78.     None of the contracts entered into by Plaintiff are executory, but rather have been performed in full by Plaintiff through Plaintiff's contribution of capital and payment of management fees and commissions to Defendants.

79. Rescission and restitution of funds invested is the appropriate remedy because Defendants' fraud was not collateral to, but rather of central materiality to Plaintiff, who invested in the alternative investments.

80. Rescission and restitution of funds invested is also appropriate because the equities balance much more strongly in favor of Plaintiff, who is primarily or exclusively a nonprofessional, individual investor who invested his personal savings and now wishes to have the security of his savings attended to by persons who did not defraud him. There is no inequity to Defendants, because Defendants knowingly undertook a fraudulent scheme to further their own interests.

## COUNT IV

### Joint and Several Liability as Crafton's Principal

81. Plaintiff repeats and re-alleges each allegation of set for herein.

82. Defendants CSI, MKCM and SunTrust are liable for the conduct of Crafton described in this Complaint under the Doctrine of Respondeat Superior or vicarious liability because as a registered representative and, on information and belief based on FINRA records, registered principal, Crafton was an agent of Defendants CSI, MKCM and SunTrust. Furthermore, based on said FINRA records, Crafton was actually an employee of said Defendants. The conduct herein described fell within the scope of his authority as an agent or within the scope of his employment because:

a. The acts and omissions arose from acts of Crafton involving the sale of securities and giving financial advice are the types of acts that Crafton was engaged or employed to do on behalf of said Defendants.

b. The fraud arose from acts done substantially within the authorized time and place for Crafton to perform acts on behalf of said Defendants for Plaintiff, because (i) Crafton operated offices which were the branch or principal offices of Defendants; (ii) the fraudulent misrepresentations complained of occurred through the mail, phone or internet from the offices that Crafton worked out of; and (iii) Crafton maintained his files and paperwork at the offices of said Defendants.

c. The fraudulent acts were committed by Crafton with at least the partial intention of furthering the financial and business interests of Defendants CSI, MKCM and SunTrust. It was announced and made public that SunTrust had purchased

MKCM and CSI for the purpose of increasing its Sports and Entertainment Specialty Group and expanding its offices to San Diego where Crafton was to be the "head" of the office.

d. At least, Defendant SunTrust performed a due diligence analysis of Crafton's business and client based along with Plaintiff's assets prior to acquiring Crafton's interests in MKCM, such that SunTrust knew or should have known about Crafton's actions, misrepresentations, lack of documentation and paperwork, improper document retention system, lack of investment strategies and portfolios for Plaintiff as well as the investments Crafton had placed Plaintiff in.

83. Plaintiff may recover from said Defendants punitive damages arising from the acts, omissions, misrepresentations and fraud of Crafton, Defendants' agent, because Plaintiff can and should be considered to have been performed by Crafton in furtherance of Defendants' business and within the scope of Crafton's employment with said Defendants.

84. The quantification of Plaintiff's aforesaid damages and losses shall be proven at trial.

## <u>COUNT V</u>
### Bad Faith Breaches of Fiduciary Duty under Applicable State Laws
### Against All Defendants

85. Plaintiff repeats and re-alleges each allegation set forth herein.

86. Each of the Defendants, in their capacities alleged herein, owed fiduciary duties of loyalty, care, and good faith to Plaintiff.

87. The fiduciary duties of loyalty, care and good faith owed by Defendants to Plaintiff required Defendants to:

a. Make full and timely disclosure of all material facts pertaining to Plaintiff's investments;

b. Obtain Plaintiff's informed consent prior to the investment transactions undertaken by Defendants as Plaintiff's advisor and principal manager.

c. Adequately diversify Plaintiff's investments so as to insulate Plaintiff from an unreasonable amount of risk.

88. In making alternative "high-risk" investments that were directly adverse Plaintiff's interests, and committing the actions and omissions alleged hereinabove, both prior to and after Plaintiff had invested in same, Defendants breached their fiduciary duties to Plaintiff.

89.     Furthermore, Defendants failure to disclose the self-dealing nature of the transactions deprived Plaintiff of the opportunity to review any conflicts of interests that may have existed and in doing so, Defendants breached their fiduciary duties of loyalty and care to Plaintiff.

90.     The above-alleged breaches of fiduciary duties were undertaken and committed by Defendants intentionally and in bad faith, by willful misconduct, intentional fraud and by gross negligence, and in knowing disregard of Plaintiff's rights.

91.     A such, the above-alleged breaches of fiduciary duties violate Defendants' duties under the applicable State common law over which the Court may exercise pendent jurisdiction.

92.     As a direct and proximate result of all Defendants' breaches, Plaintiff has suffered damages in an amount to be determined at trial.

<u>**COUNT VI**</u>
**Fraudulent Misrepresentation Against All Defendants**

93.     Plaintiff repeats and re-alleges each allegation set forth herein.

94.     Defendants represented to Plaintiff that, among other things, they would act in the best interests of Plaintiff in making investment decisions, and that Plaintiff's investment strategy would be one involving conservative investments to maximize returns while protecting their principal investment.

95.     Additionally, Defendants represented that they would conduct frequent and timely due diligence in order to optimize the return on Plaintiff's investments and to protect Plaintiff from substantial volatility in the investments.

96.     Defendants had discretionary authority to invest on Plaintiff's behalf and Defendants were responsible for or involved in the drafting and/or review and approval of investments. As Plaintiff's investment managers, Defendants also had a fiduciary duty to refrain from making fraudulent statements and to rectify any and all material misrepresentations and omissions once they became apparent.

97.     Defendants' representations were false. Specifically, Defendants refrained from the record keeping and due-diligence that was custom within the investment community and Defendants continued to perpetuate investments in vehicles that were "high-risk" and converse to Defendants' representations that Plaintiff's principal would be liquid and protected.

98.     Defendants made the representations with knowledge of their falsity, reckless disregard for their truth, or without reasonable grounds for believing the representations to be true when they were made.

99.     Defendants intended that Plaintiff would rely on the representations in deciding whether to invest in said alternative investments.

100.    Plaintiff justifiably relied on Defendants' representations and it was not otherwise apparent that Defendants' assertions were false.

101.    Defendants' misrepresentations caused Plaintiff to invest with Defendants and to refrain from withdrawing their capital investments when it was immediately apparent that the investments would continue to decline in value.

102.    Plaintiff suffered financial harm due the immediate diminution of the value of their investments and from Defendants' self-dealing transactions without disclosure of material terms or obtaining informed consents therefor.

103.    Plaintiff's reliance on Defendants' representations was reasonable and justifiable, and was a substantial factor in causing their harm, as the representations contributed to the information available to Plaintiff at the time they decided to invest in the Partnerships.

104.    As a direct and proximate result of all Defendants' actions Plaintiff has suffered damages in an amount to be determined at trial.

## <u>COUNT VII</u>

### Willful Breach of Covenant of Good Faith and Fair Dealing Against All Defendants

105.    Plaintiff repeats and re-alleges each allegation set forth herein.

106.    The contractual relationship between Plaintiff and Defendants included an implied covenant of good faith and fair dealing, which requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the contract. A breach of the covenant of good faith and fair dealing may occur even without violating an express term of the contract.

107.    Defendants violated the implied covenant of good faith and fair dealing, where Defendants made investments without obtaining Plaintiff's consent and without adequate disclosure.

108.    Defendants' actions were undertaken in bad faith, for the sole purpose of benefiting Defendants at Plaintiff's expense. In effect, Defendants' conduct induced Plaintiff to

enter into a contract that would allow Defendants' to purchase investment vehicles that were substantially over-valued, but would adequately serve Defendants' own financial purposes and self-dealing motivations.

109. Defendants' conduct was done in bad faith, by willful misconduct, fraud and gross negligence, and deprived Plaintiff of a number of bargained-for benefits under their contracts with Defendants, and therefore breached the duty of good faith and fair dealing.

110. As a direct and proximate result of all Defendants' actions Plaintiff has suffered damages in an amount to be determined at trial.

**COUNT VIII**
**Negligence Against All Defendants**

111. Plaintiff repeats and re-alleges each allegation set forth herein.

112. Defendants owed Plaintiff a duty to act with due care in carrying out any transactions on behalf of Plaintiff and/or in identifying, sourcing, negotiating, structuring, analyzing and effectuating any investments for the benefit of Plaintiff. Defendants also owed Plaintiff a duty to act with due care in evaluating and managing the assets of Plaintiff. Additionally, Defendants owed Plaintiff a duty to exercise reasonable care in disclosing the material terms of any transactions engaged in on behalf of Plaintiff within a reasonable period of time, and to correct in an expedient manner any representations regarding such transactions that may have been misleading to Plaintiff.

113. In identifying, analyzing, negotiating, structuring, approving and making the investments, and in failing to disclose the material terms of those transactions in a reasonably expedient manner thereafter, and failing to correct misleading representations regarding the alternative investments and the management and investment objectives of Plaintiff in general, Defendants breached their duties of care owed to Plaintiff.

114. As a direct and proximate result of Defendants' negligence, Plaintiff suffered harm in the amount of Plaintiff's proportionate share of the millions of dollars in overpayments and losses on investments, as well as management fees and other charges paid to Defendants during the period of time that Defendants acted negligently and breached the numerous duties owed to Plaintiff.

115. The quantification of Plaintiff's losses and damages shall be proven at trial.

## COUNT IX
### Negligent Supervision/Training Against Defendants SunTrust and MKCM

116.    Plaintiff repeats and re-alleges each allegation set forth herein.

117.    Defendants SunTrust and MKCM had a duty to supervise their employees, including Defendant Crafton, and to ensure that their employees undertook proper due diligence and made any and all requisite disclosures, particularly concerning the high-risk alternative investments their respective employees were promoting to Plaintiff.

118.    Defendants SunTrust and MKCM also had a duty to investigate employees that failed to make proper disclosures or keep proper records and to remediate any of their employees' improper and/or fraudulent conduct once they became aware of such conduct.

119.    On information and belief, Defendants SunTrust and MKCM breached that duty by failing to provide the necessary supervision and/or training. Specifically, SunTrust and MKCM failed to require their respective employees to provide complete disclosure and in doing so, Defendants ratified their employees' decisions to withhold pertinent financial information that would have otherwise informed Plaintiff of the rapid deterioration of their capital contributions.

120.    As a direct and proximate result of Defendants SunTrust and MKCM's breach of their duty to supervise their employees, Plaintiff suffered financial harm when Defendant Crafton failed to provide the necessary disclosures and failed to refrain from fraudulent, self-interested, and self-serving conduct.

121.    The quantification of Plaintiff's losses and damages shall be proven at trial.

## COUNT X
### Negligent Hiring/Retention Against Defendant SunTrust

122.    Plaintiff repeats and re-alleges each allegation set forth herein.

123.    Defendant SunTrust owed a duty to Plaintiff and other investors to assemble an investment team that provided investment services that were transparent, based on truth rather than concealment, and were otherwise non-fraudulent in nature.

124.    On information and belief, Defendant SunTrust breached that duty by failing to investigate adequately the background and abilities of its employees it hired, including Defendant Crafton, who came to be an employee of SunTrust by way of SunTrust's *$2.7 million*

*dollar* acquisition of Crafton's MKCM. Specifically, Defendant SunTrust breached its duty of care, when it hired employees that were not adept and familiar with the financial disclosure required by law or as a matter of custom within the financial community.

125. As a result of Defendant SunTrust's breach of its duty to hire and retain only competent and forthright professionals, Plaintiff suffered financial harm the amounts of which are to be proven at trial.

## COUNT XI

### Failure to Warn Against All Defendants

126. Plaintiff repeats and re-alleges each allegation set forth herein.

127. Defendants promoted and recommended alternative investments, with high-risk and illiquid profiles that were foreseeable to Defendants at all times but not readily recognizable to an ordinary or lay investor.

128. Defendants could have reduced or avoided the risk associated with these alternative investments by providing reasonable instructions or warnings to Plaintiff as well as providing the usual and customary oversight of Plaintiff's investment accounts.

129. Defendants failed to properly identify the alternative investments Plaintiff's capital had been contributed to and as such, Defendants failed to identify, disclose, and warn Plaintiff of the risks associated with those particular investments with any degree of specificity.

130. As a direct and proximate consequence of Defendants failure to warn Plaintiff, Plaintiff suffered substantial financial harm and the instantaneous diminution of their capital contributions; a consequence that was not readily apparent or foreseeable to Plaintiff at any time, especially considering Defendants' misstatements and misrepresentation and ultimate failure to warn Plaintiff of the risk inherent in these investment vehicles.

131. Plaintiff's aforesaid losses shall be proven at the time of trial.

## COUNT XII
### Alternative Derivative Claim Against All Defendants

132. Plaintiff repeats and re-alleges each allegation set forth herein.

133. The allegations of this Count are intended in the alternative to the theories of recovery alleged above. These allegations are intended to apply only in the event that the allegations of other Counts are found insufficient and cannot be amended, as a matter of law.

134.     Plaintiff has repeatedly made demands on Defendants for refunds of investments made into the investments and Plaintiff's demands have been refused, denied, and rejected, and to the extent any such request has been insufficient to encompass the entire subject matter hereof, it would be useless and futile to attempt any further.

## COUNT XIII

### Professional Negligence/Malpractice

135.     Plaintiff repeats and re-alleges each allegation set forth herein.

136.     Defendants SunTrust, CSI, MKCM and Crafton were responsible for investing Plaintiff's account in accordance with Plaintiff's stated conservative investment strategy and each Defendant had an independent duty to exercise proper care, prudence and professional responsibility in handling, managing and investing Plaintiff's money.

137.     Defendants failed to exercise prudence, care and professional responsibility in investing, managing, diversifying, monitoring and safeguarding Plaintiff's investments and assets under their management.

138.     Defendants ignored industry standards, industry literature and numerous red flags associated with the investment strategy employed with respect to Plaintiff's investment accounts and otherwise failed to perform due diligence and review of the investments Defendants placed Plaintiff's into and utterly failed to monitor said investments.

139.     As a direct and proximate result, of Defendants' professional negligence and malpractice Plaintiff lost a substantial portion of his investment accounts, the exact amount of which will be proven at trial.

## JURY DEMAND AND PRAYER FOR RELIEF

140.     Plaintiff hereby demands a trial by jury on all issues.

WHEREFORE, Plaintiff prays for the following relief and judgment against Defendants individually, jointly, severally and in the alternative:

A.     Rescission of the subscription agreements between Plaintiff and the alternative investment/General Partner, or alternatively, monetary damages restoring Plaintiff to the position he would have occupied had the subscription agreements/ alternative investments never been made, according to proof;

B.     Compensatory Damages for Breaches of Fiduciary Duty;

C.      Disgorgement of management fees, performance fees, costs, other fees and interest paid to Defendants during the relevant time periods;

D.      Punitive Damages for the willful, wanton and fraudulent acts of Defendants;

E.      Monetary judgment against Defendants for an amount equal to the damages Plaintiff suffered as a result of Defendants' actions complained of;

F.      Reasonable attorneys' fees and litigation costs associated with this lawsuit;

G.      Pre-judgment interest; and

H.      Such other and further relief as the Court deems just and proper.

BY: _____

Andrew M Smith, Esquire
Counsel for Plaintiff Jason Terry